## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**DANA NOAKES**                                        CIVIL ACTION

**VERSUS**                                                    No. 22-213

**DEPARTMENT OF HOMELAND**                 SECTION I
**SECURITY, ET AL.**

## <u>ORDER & REASONS</u>

Before this Court is a motion to stay,[1] filed by plaintiff Dana Noakes
("Noakes"). Defendants, Secretary for the Department of Homeland Security
Alejandro Mayorkas and Transportation Security Manager Reginald Chesterfield
("Chesterfield"), through the United States Attorney's Office for the Eastern District
of Louisiana (collectively, "defendants"), oppose Noakes' motion to stay and instead
ask this Court to dismiss those of Noakes' claims for which she has not exhausted her
administrative remedies.[2] For the reasons discussed below, Noakes' motion to stay is
denied and her claims pertaining to her second Equal Employment Opportunity
("EEO") complaint are dismissed without prejudice.

## I.      BACKGROUND

### A.      Noakes' Allegations of Harassment and Retaliation

Noakes is employed by the Transportation Security Administration ("TSA") as
a Transportation Security Officer at Louis Armstrong New Orleans International
Airport.[3] In June 2020, Noakes "made comments about some of the global protests

---

[1] R. Doc. No. 30.
[2] R. Doc. No. 31.
[3] R. Doc. No. 1 ¶¶ 1, 7.

and riots on her private Facebook page, specifically criticizing a video of a group of white rioters in the United Kingdom."[4] Noakes alleges that, between June 17 and July 3, 2020, several of her co-workers "harassed" her by "[taking] screenshots of her comments and her profile picture" and identifying her as a TSA Supervisor at the New Orleans Airport.[5] Plaintiff also alleges that her coworkers "edited portions of Ms. Noakes's comments out of their screenshots in order to defame her as a racist[,]" and "shared her picture, work information, and work location in a private Facebook group called the 'TSA Breakroom,' all without Ms. Noakes's permission."[6] Noakes alleges that this "harassment" included threats directed against her and made her "fearful for her family's safety as well as her own."[7] Noakes alleges that "[m]any of the coworkers who participated in the harassment of Ms. Noakes are non-white."[8] Noakes filed a complaint of workplace harassment under TSA's Anti-Harassment Program ("AHP") on June 18, 2020.[9]

Noakes alleges that, in combination with the fact that no disciplinary action was taken under the AHP against the employees whom Noakes alleges were harassing her,[10] notice by Chesterfield that he would not pursue disciplinary action against Noakes "at this time"[11] functioned as a "threat: if Ms. Noakes were to at any

---

[4] *Id.* ¶ 9.
[5] *Id.* ¶ 12.
[6] *Id.* ¶¶ 13, 14.
[7] *Id.* ¶ 17.
[8] *Id.* ¶ 19.
[9] *Id.* ¶ 20.
[10] *Id.* ¶ 45.
[11] *Id.* ¶ 65.

time express any political or social viewpoints Defendant Chesterfield or other TSA management did not like, he would move forward with discipline against her."[12]

She also alleges that she has suffered retaliation, noting that she has applied for three promotions and only had a response about one, which was denied.[13] Noakes asserts that, in choosing who to promote, "TSA improperly took into account Ms. Noakes's filing of an EEO complaint and the EEO's subsequent dismissal in addition to her race . . . . Had [Noakes] not lodged the EEO complaint in this case, she would have been selected for the position."[14] As further evidence of alleged retaliation, Noakes states that the EEO began auditing her hours "in an apparent attempt to later, pretextually terminate her."[15]

### B.   Noakes' Equal Employment Opportunity Complaints

On July 1, 2021, Noakes filed a formal EEO complaint of discrimination with TSA's Office for Civil Rights and Civil Liberties.[16] In this complaint, Noakes alleged that:

> TSA subjected the Complainant to discrimination and harassment (sexual and nonsexual) based on race (Caucasian), color (white), sex (female), and age (YOB: 1969) and reprisal (prior EEO activity) when on April 14, 2021, management informed Complainant that her Anti-Harassment Program (AHP) investigation was closed.[17]

---

[12] *Id.* ¶ 66.
[13] *Id.* ¶ 72.
[14] *Id.* ¶ 74.
[15] *Id.* ¶ 75.
[16] *Id.* ¶ 83; R. Doc. No. 19-3, at 1.
[17] R. Doc. No. 19-3, at 2.

On October 27, 2021, TSA's Office for Civil Rights and Civil Liberties issued a procedural dismissal of the formal EEO complaint, on the grounds that

> [Noakes'] allegations amount to an impermissible attack on the AHP . . . . The [Equal Employment Opportunity Commission ("EEOC")] has consistently held that an employee cannot use the EEO complaint process to lodge a collateral attack on another administrative proceeding, such as those involving resolution of workplace violence complaints and other related process. The essence of this claim is Complainant's dissatisfaction with the AHP's investigation and her dissatisfaction with the lack of her response from the AHP coordinator with regard to the concerns with the AHP's investigation. The proper forum for Complainant to raise challenges with the AHP process is within the AHP program office, not the EEO process.[18]

TSA's Office for Civil Rights and Civil Liberties concluded that Noakes' "allegations [were] outside the purview of EEOC regulations and jurisdiction" and dismissed the complaint "pursuant to 29 C.F.R. § 1614.107(a)(l), for failure to state a claim due to lodging a collateral attack against the [AHP]."[19]

Noakes received her right-to-sue letter for the October 27, 2021 procedural dismissal on November 4, 2021.[20] On January 6, 2022, Noakes filed a second EEO complaint of discrimination "with respect to her denial of promotions and premature loss of FMLA leave."[21] Noakes acknowledges that she has not yet received a right-to-sue letter with regards to her second EEO complaint.[22]

---

[18] *Id.* at 3.
[19] *Id.*
[20] R. Doc. No. 1, ¶ 84.
[21] *Id.* ¶ 85.
[22] R. Doc. NO. 30-1, at 1.

4

### C.    Procedural Posture

Noakes filed the present action, alleging a hostile work environment based on race (Count I), retaliation (Count II), and race-based employment discrimination, in violation of Title VII of the Civil Rights Act of 1964, as amended, 28 U.S.C. § 2000e, *et seq.*[23] Noakes also brought a claim against Chesterfield, in his official capacity, for retaliation based on protected political speech in violation of the First Amendment of the U.S. Constitution (Count IV).[24]

On July 12, 2022, the defendants filed a motion to dismiss for failure to state a claim and for lack of jurisdiction, on the grounds that Noakes failed to exhaust her administrative remedies and failed to state a cognizable claim.[25] On July 19, 2022, Noakes filed an opposition[26] to the defendants' motion to dismiss, and the defendants filed a reply on July 27, 2022.[27] On August 2, 2022, Noakes filed the motion to stay[28]

---

[23] *Id.* ¶ 86–117.

[24] *Id.* ¶ 118–123.

[25] R. Doc. No. 19. In addition to arguing that Noakes has failed to exhaust her administrative remedies with regards to her claims arising out of her second EEO action, defendants' motion to dismiss also alleges that Noakes failed to state a cognizable claim for relief—pursuant to Fed. R. Civ. P. 12(b)(6)—with regards to her "claims of retaliation and premature loss of FMLA leave," R. Doc. No. 1, ¶ 85, because her complaint "merely creates a suspicion of a legally cognizable right of action." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Noakes' complaint fails, defendants argue, because it does not "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). As this Court finds that Noakes failed to exhaust her administrative remedies as to her second EEO action, and therefore her claims arising out of that proceeding should be dismissed without prejudice, the Court does not address the defendants' Fed. R. Civ. P. 12(b)(6) argument.

[26] R. Doc. No. 21.

[27] R. Doc. No. 27.

[28] R. Doc. No. 30.

presently before the Court, and defendants filed their opposition[29] to Noakes' motion on August 16, 2022.

## II.   LAW & ANALYSIS

### A.   Noakes Failed to Exhaust Her Administrative Remedies

"Employment discrimination plaintiffs must exhaust administrative remedies before pursuing claims in federal court. Exhaustion occurs when the plaintiff files a timely charge with the EEOC and receives a statutory notice of right to sue." *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378–79 (5th Cir. 2002) (citing *Dao v. Auchan Hypermarket*, 96 F.3d 787, 788–89 (5th Cir.1996)); *see also Cormier v. Wal-Mart Stores, Inc.*, 145 F. Supp. 3d 666, 667 (W.D. La. 2015) ("Before instituting a Title VII action in federal district court, a private plaintiff must file an EEOC complaint against the discriminating party within 180 days of the alleged discrimination and receive statutory notice of the right-to-sue the respondent named in the charge.").

Noakes acknowledges that she has yet to receive notice of her right to sue from her pending second EEO complaint,[30] and tacitly acknowledges that this constitutes a failure to exhaust her administrative remedies.[31] While "administrative exhaustion is not a *jurisdictional* requirement, it is still a requirement." *Stroy v. Gibson on behalf of Dep't of Veterans Affs.*, 896 F.3d 693, 698 (5th Cir. 2018) (affirming district court's dismissal of plaintiff's employment discrimination suit where plaintiff failed to

---

[29] R. Doc. No. 31.

[30] R. Doc. No. 30-1, at 1.

[31] *Id.* at 3 (citing *Stroy*, 896 F.3d at 698 n.2, as support for the proposition that dismissal for *failure to exhaust* under Fed. R. Civ. P. 12(b)(6) is dismissal without prejudice).

exhaust administrative remedies and offered no justification for failing to do so besides his "good faith effort") (emphasis in original). The choice before this Court, then, is whether to grant Noakes' request for a stay or to dismiss without prejudice her claims pertaining to her second EEO complaint.

### B.      Dismissal Furthers the Purposes of the Administrative Exhaustion Requirement

The doctrine of administrative exhaustion serves two purposes:

> First, exhaustion protects administrative agency authority . . . . Exhaustion gives an agency an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court, and it discourages disregard of [the agency's] procedures . . . .

> Second, exhaustion promotes efficiency . . . . Claims generally can be resolved much more quickly and economically in proceedings before an agency than in litigation in federal court. In some cases, claims are settled at the administrative level, and in others, the proceedings before the agency convince the losing party not to pursue the matter in federal court . . . . And even where a controversy survives administrative review, exhaustion of the administrative procedure may produce a useful record for subsequent judicial consideration.

*Woodford v. Ngo*, 548 U.S. 81, 89 (2006) (internal citations and quotations omitted). A "less exacting rule [than administrative exhaustion] would . . . circumvent the statutory scheme, since Title VII clearly contemplates that no issue will be the subject of a civil action until the EEOC has first had the opportunity to attempt to obtain voluntary compliance." *Pacheco v. Mineta*, 448 F.3d 783, 788–89 (5th Cir. 2006) (quoting *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 467 (5th Cir.1970)).

The "proponent of a stay bears the burden of establishing its need." *Equal Emp. Opportunity Comm'n v. Wal-Mart Stores Texas, LLC*, No. CV H-18-3407, 2020 WL

2078303, at *2 (S.D. Tex. Apr. 27, 2020) (quoting *Clinton v. Jones*, 520 U.S. 681, 709 (1997)). Given Title VII's goal of providing agencies with the opportunity to self-correct before a civil action is brought, a stay would seem to thwart that goal by undermining the administrative process. Congress saw fit to require administrative exhaustion as a prerequisite to bringing a civil action against a federal employer under Title VII of the Civil Rights Act of 1964;[32] accordingly, Noakes must provide a compelling reason for this Court to permit her to bypass this requirement. Noakes advances two reasons why this Court should grant a stay in lieu of dismissing her claims pertaining to her second EEO complaint: fairness and judicial economy.[33] Each argument is discussed below in turn.

### i.   *Fairness*

Noakes' argument concerning fairness seems to be that issuing a stay would not prejudice the interests of either party—she even goes so far as to argue that both parties "benefit from the issuance of a stay."[34] This argument is unavailing.

---

[32] "Within 90 days of receipt of notice of final action taken by a department, agency, or unit . . . or by the Equal Employment Opportunity Commission upon an appeal from a decision or order of such department, agency, or unit on a complaint of discrimination based on race, color, religion, sex or national origin . . . , or after one hundred and eighty days from the filing of the initial charge with the department, agency, or unit or with the Equal Employment Opportunity Commission on appeal from a decision or order of such department, agency, or unit until such time as final action may be taken by a department, agency, or unit, an employee or applicant for employment, if aggrieved by the final disposition of his complaint, or by the failure to take final action on his complaint, may file a civil action as provided in section 2000e-5 of this title, in which civil action the head of the department, agency, or unit, as appropriate, shall be the defendant." 42 U.S.C. § 2000e-16(c).

[33] R. Doc. No. 30-1, at 3.

[34] *Id.* at 4.

Concern for fairness marshals in favor of dismissing Noakes' claims pertaining to her second EEO complaint until she has satisfied the administrative exhaustion requirement of Title VII. As the Supreme Court discussed in *Woodford*, 548 U.S. at 89, the administrative exhaustion requirement safeguards administrative agency authority by allowing agencies the opportunity to address issues internally before being haled into court. The exhaustion requirement also encourages abidance with and respect for the administrative process. Allowing Noakes to make an end run around the administrative exhaustion requirement would therefore prejudice the Department of Homeland Security's interest in administrative autonomy and respect for its procedures.

*ii.    Judicial Economy*

Noakes' second argument concerning judicial economy is likewise unconvincing. Noakes argues that the goal of preserving finite judicial resources is best served by issuing a stay to avoid duplicative motions practice. Yet concern for judicial economy would truly have been best served had Noakes filed an action based solely on the exhausted claims from her first EEO complaint and waited to bring an action based on her second EEO complaint until it was fully adjudicated.

Moreover, one of the central objectives of the administrative exhaustion requirement is to preserve judicial resources by allowing agencies to resolve issues internally without the need to resort to litigation. *See Pacheco*, 448 F.3d at 788–89 ("[A] primary purpose of Title VII is to trigger the investigatory and conciliatory procedures of the EEOC, in attempt to achieve non-judicial resolution of employment

discrimination claims."). As noted by the defendants in their opposition to Noakes'

motion for a stay, there are a number of potential outcomes from Noakes' second EEO

complaint,[35] including outcomes favorable to Noakes. Allowing the Department of

Homeland Security the opportunity to resolve any issues raised in Noakes' second

complaint internally without the need for involvement of the federal judiciary could

save valuable time and resources. After the agency reaches a final decision, if Noakes

is dissatisfied with the outcome, she may then choose to appeal or to file a civil action

in federal court.

    While dismissing Noakes' claims may result in a certain amount of duplicative

motions practice,[36] as the Supreme Court has noted, the "exhaustion of the

administrative procedure may produce a useful record for subsequent judicial

consideration[,]" *Woodford*, 548 U.S. at 89, which may aid this Court in making

determinations in any future actions Noakes may bring. If Noakes receives a right-

---

[35] R. Doc. No. 31, at 2 n.1.

[36] Noakes also argues that duplicative litigation is "disfavored." R. Doc. No. 30-1, at
5. To support this proposition, she cites cases pertaining to in forma pauperis suits
brought by prisoners under 28 U.S.C. § 1915(d). *See, e.g.*, *Bailey v. Johnson*, 846 F.2d
1019, 1021 (5th Cir. 1988); *Thompson v. Edwards*, No. 19-715, 2020 WL 2373987, at
*2 (M.D. La. Apr. 6, 2020) (Wilder-Doomes, Mag.), *report and recommendation
adopted*, No. CV 19-715, 2020 WL 2341137 (M.D. La. May 11, 2020) (Dick, J.). While
28 U.S.C. § 1915(d) allows for dismissal of a "pauper's complaint if the court is
'satisfied that the action is frivolous or malicious[,]'" *Pittman v. Moore*, 980 F.2d 994,
994–95 (5th Cir. 1993) (citing § 1915(d)), no such statutory provision is at issue in
Noakes' case. As Noakes herself has noted, dismissal for failure to exhaust pursuant
to Fed. R. Civ. P. 12(b)(6) is dismissal without prejudice. *Stroy*, 896 F.3d at 698 n.2.
If Noakes receives a right-to-sue letter after adjudication of her second EEO
complaint is complete, she is not barred from bringing a new action. Moreover, if her
claims arising from her first and second complaint are so similar as to be duplicative,
the present action will presumably appropriately address all pertinent issues.

to-sue letter after administrative proceedings regarding her second EEO complaint are complete, she is free to consolidate any new actions with the present action to allow the Court to review all her claims and all the evidence at once.

Accordingly, the interest of judicial economy is served by dismissing Noakes' claims arising out of her second EEO complaint without prejudice to her bringing a future action based upon then after exhaustion of her administrative remedies.

### III.    CONCLUSION

For the reasons stated herein,

**IT IS ORDERED** that Noakes' motion to stay is **DENIED** and her claims pertaining to the second EEO complaint are **DISMISSED WITHOUT PREJUDICE**.

New Orleans, Louisiana, August 30, 2022.

_____
**LANCE M. AFRICK
UNITED STATES DISTRICT JUDGE**

11