## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**DANA NOAKES**

**CIVIL ACTION**

**VERSUS**

**No. 22-213**

**DEPARTMENT OF HOMELAND SECURITY, ET AL.**

**SECTION I**

## ORDER & REASONS

Before this Court is a Federal Rule of Civil Procedure 12(b)(6) motion[1] to dismiss plaintiff Dana Noakes' ("Noakes") lawsuit, filed by defendants Secretary for the Department of Homeland Security Alejandro Mayorkas ("Mayorkas") and Transportation Security Manager Reginald Chesterfield ("Chesterfield") (collectively, "defendants"). The defendants allege that Noakes fails to state a claim upon which relief can be granted.[2] For the reasons discussed below, defendants' motion is denied in part and granted in part.[3]

---

[1] R. Doc. No. 19.

[2] R. Doc. No. 19-1, at 2. The defendants' motion also raises Rule 12(b)(1) arguments, asserting that several of Noakes' claims are not properly before the Court because she has not exhausted her administrative remedies with regards to those claims arising from her second Equal Employment Opportunity ("EEO") complaint, filed on January 6, 2022, regarding "her denial of promotions and premature loss of [Family and Medical Leave Act ("FMLA")] leave." R. Doc. No. 1, ¶ 85. As the Court dismissed these unexhausted claims on August 30, 2022, *see* R. Doc. No. 34, it will only address the defendants' Rule 12(b)(6) arguments with regards to Noakes' first EEO complaint.

[3] As a full discussion of the facts underlying this action is provided in R. Doc. No. 34, the factual background underlying Noakes' complaints is omitted here.

# I.    BACKGROUND

## A.    Noakes' Equal Employment Opportunity ("EEO") Complaints

Noakes is employed by the Transportation Security Administration ("TSA") as a Transportation Security Officer at Louis Armstrong New Orleans International Airport.[4] On July 1, 2021, Noakes filed a formal EEO complaint of discrimination with TSA's Office for Civil Rights and Civil Liberties.[5] In her complaint, Noakes alleged that

> TSA subjected the Complainant to discrimination and harassment (sexual and nonsexual) based on race (Caucasian), color (white), sex (female), and age (YOB: 1969) and reprisal (prior EEO activity) when on April 14, 2021, management informed Complainant that her Anti-Harassment Program (AHP) investigation was closed.[6]

On October 27, 2021, TSA's Office for Civil Rights and Civil Liberties issued a procedural dismissal of the formal EEO complaint, on the grounds that

> [Noakes'] allegations amount to an impermissible attack on the AHP . . . . The [Equal Employment Opportunity Commission ("EEOC")] has consistently held that an employee cannot use the EEO complaint process to lodge a collateral attack on another administrative proceeding, such as those involving resolution of workplace violence complaints and other related process. The essence of this claim is Complainant's dissatisfaction with the AHP's investigation and her dissatisfaction with the lack of her response from the AHP coordinator with regard to the concerns with the AHP's investigation. The proper forum for Complainant to raise challenges with the AHP process is within the AHP program office, not the EEO process.[7]

---

[4] R. Doc. No. 1 ¶¶ 1, 7.
[5] *Id.* ¶ 83; R. Doc. No. 19-3, at 2.
[6] R. Doc. No. 19-3, at 2. While Noakes' July 1, 2021 EEO complaint included multiple grounds for discrimination and harassment, such as Noakes' age and sex, the allegations in her complaint only pertain to race, color, and reprisal.
[7] *Id.* at 3.

TSA's Office for Civil Rights and Civil Liberties concluded that Noakes' "allegations [were] outside the purview of EEOC regulations and jurisdiction" and dismissed the complaint "pursuant to 29 C.F.R. § 1614.107(a)(l), for failure to state a claim due to lodging a collateral attack against the [AHP]."[8] Noakes received her right-to-sue letter for the October 27, 2021 procedural dismissal on November 4, 2021.[9]

## B.    Procedural Posture

Noakes filed the present action against Mayorkas and Chesterfield in their official capacities, alleging a hostile work environment based on race (Count I),[10] retaliation (Count II),[11] and race-based employment discrimination (Count III), in violation of Title VII of the Civil Rights Act of 1964, as amended, 28 U.S.C. § 2000e, *et seq.*[12] Noakes also brought a claim against Chesterfield, in his official capacity, for retaliation based on protected political speech in violation of the First Amendment of the U.S. Constitution (Count IV).[13] On July 12, 2022, the defendants filed a motion to dismiss for failure to state a claim—the motion currently before the Court.[14]

---

[8] *Id.*
[9] R. Doc. No. 1, ¶ 84.
[10] *Id.* ¶¶ 86–99.
[11] *Id.* ¶¶ 100–104.
[12] *Id.* ¶¶ 105–117.
[13] *Id.* ¶¶ 118–123.
[14] R. Doc. No. 19.

## II.     STANDARDS OF LAW

### *Federal Rule of Civil Procedure 12(b)(6)*

Pursuant to Rule 12(b)(6), a district court may dismiss a complaint or part of a complaint when a plaintiff fails to set forth well-pleaded factual allegations that "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007). The complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 570). If the well-pleaded factual allegations "do not permit the court to infer more than the mere possibility of misconduct," then "the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Rule 8(a)(2)) (alteration in original).

In assessing the complaint, a court must accept all well-pleaded facts as true and construe all factual allegations in the light most favorable to the plaintiff. *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999); *Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010). "[T]he Court must typically limit itself to the contents of the pleadings, including attachments thereto." *Admins. of the Tulane Educ. Fund v. Biomeasure, Inc.*, No. 08-5096, 2011 WL 4352299, at *3 (E.D. La. Sept. 16, 2011) (Vance, J.) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000)). In assessing a complaint, courts "do not accept as true conclusory allegations,

unwarranted factual inferences, or legal conclusions." *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005) (citing *Southland Sec. Corp. v. INSpire Ins. Sols., Inc.*, 365 F.3d 353, 361 (5th Cir. 2004)).

The complaint "must provide the defendant with fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 346 (2005) (quotations omitted). "[P]laintiffs must allege facts that support the elements of the cause of action in order to make out a valid claim." *Webb v. Morella*, 522 F. App'x 238, 241 (5th Cir. 2013) (quoting *City of Clinton, Ark. v. Pilgrim's Pride Corp.*, 632 F.3d 148, 152–53 (5th Cir. 2010) (quotation marks omitted)). "[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Id.* (quoting *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993) (quotation marks omitted)). "Dismissal is appropriate when the complaint 'on its face show[s] a bar to relief.'" *Cutrer v. McMillan*, 308 F. App'x 819, 820 (5th Cir. 2009) (quoting *Clark v. Amoco Prod. Co.*, 794 F.2d 967, 970 (5th Cir. 1986) (alteration in original)).

## III.   LAW & ANALYSIS

### A. Noakes' Complaint Fails to State a Cognizable Title VII Hostile Work Environment Claim (Count I)

#### *i.   Hostile work environment claims under Title VII*

A plaintiff need not plead a prima facie hostile work environment case to survive the Rule 12(b)(6) stage. In *Stone v. Louisiana Dep't of Revenue*, the Fifth Circuit held that the district court "applied incorrect standards when it dismissed [the plaintiff's] discrimination, harassment, and retaliation claims for failure to plead

5

a prima facie case." 590 F. App'x 332, 339 (5th Cir. 2014). In reaching its holding, the Fifth Circuit relied upon the Supreme Court's decision in *Swierkiewicz v. Sorema N. A.*, which noted the incongruity between requiring a plaintiff to "plead more facts [to survive a motion to dismiss] than he may ultimately need to prove to succeed on the merits" in cases alleging direct evidence of Title VII discrimination. 534 U.S. 506, 510–12 (2002). Accordingly, in *Stone*, the Fifth Circuit noted the "proper standard" at the Rule 12(b)(6) stage is the *Iqbal* standard—whether the plaintiff has "pleaded factual content [that] allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." 556 U.S. at 678.

However, the Fifth Circuit further noted that a plaintiff must nonetheless "allege facts sufficient to state all the *elements* of her claim." *Stone*, 590 F. App'x at 339 (quoting *Mitchell v. Crescent River Port Pilots Ass'n*, 265 F. App'x 363, 370 (5th Cir. 2008)) (emphasis in original). Put another way, "she must plead sufficient facts on all of the ultimate elements of the claim to make her case plausible." *Davis v. Tex. Health & Hum. Servs. Comm'n*, 761 F. App'x 451, 454 (5th Cir. 2019) (per curiam); *see also Wright v. Union Pac. R.R. Co.*, 990 F.3d 428, 433 (5th Cir. 2021) (Plaintiffs "[need] 'plausibly allege facts going to the ultimate elements of the claim to survive a motion to dismiss.'") (quoting *Cicalese v. Univ. of Tex. Med. Branch*, 924 F.3d 762, 768 (5th Cir. 2019)) (alterations omitted and added). Therefore, "[a]llegations related to [the] prima facie inquiry may . . . be helpful in satisfying the general *Iqbal* plausibility

standard." *Haskett v. Cont'l Land Res., L.L.C.*, 668 F. App'x 133, 134 (5th Cir. 2016) (citation omitted).[15]

To state a prima facie case of a hostile work environment based on race in violation of Title VII, a plaintiff must establish that: "(1) the victim belongs to a protected group; (2) the victim was subjected to unwelcome harassment; (3) the harassment was based on a protected characteristic; (4) the harassment affected a term, condition, or privilege of employment; and (5) the victim's employer knew or should have known of the harassment and failed to take prompt remedial action." *E.E.O.C. v. WC & M Enters., Inc.*, 496 F.3d 393, 399 (5th Cir. 2007).[16]

> ii.   *Noakes has failed to plead sufficient facts to make a plausible claim of a hostile work environment based on race in violation of Title VII*

In her complaint, Noakes alleges that "TSA . . . fostered and permitted a severe and pervasive hostile work environment based on race"[17] by:

> (1) refusing to discipline any of Ms. Noakes's non-white harassers because of their race (which only emboldened them to continue their campaign of harassment against Ms. Noakes); (2) refusing to investigate Ms. Noakes's chief harassers, who are non-white, because of their race; (3) violating TSA's own policies in bringing

---

[15] The Court notes the difficulty of threading the needle at the motion to dismiss stage between appropriately requiring the plaintiff allege "sufficient" facts to state each element of her claim—which necessitates considering the elements of a prima facie case—and inappropriately requiring the plaintiff "make a showing of each prong of the prima facie test[.]" *Stone*, 590 F. App'x at 339.

[16] A plaintiff alleging a hostile work environment in violation of Title VII, "[a]s in any lawsuit, . . . may prove his case by direct or circumstantial evidence. The trier of fact should consider all the evidence, giving it whatever weight and credence it deserves . . . ." *U.S. Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 714 (1983); *see also Garza v. Kempthorne*, No. 08-2566, 2010 WL 1427266, at *4 (S.D. Tex. Apr. 8, 2010) ("A plaintiff may use either direct or circumstantial evidence to prove claims for discrimination and hostile work environment").

[17] R. Doc. No. 1, ¶ 91.

allegations against Ms. Noakes without any supporting documents eight months after the alleged misconduct; (4) violating TSA's own policies by failing to render a timely decision on any of the complaints at issue, in a way that caused psychological harm to Ms. Noakes; (5) lying to Ms. Noakes on or around March 1, 2021, when TSA certified that it had no further allegations against her when in fact it did, or fabricating an additional allegation, Allegation #2, upon receiving Ms. Noakes's response to the first allegation; (6) construing the First Amendment to protect non-white employees' harassment of Ms. Noakes's but not a white employee's expressions of political or social opinions; (7) monitoring Ms. Noakes's social media; and (8) threatening Ms. Noakes with additional disciplinary processes if she expresses a viewpoint disfavored by TSA. This is a non-exhaustive list of TSA demonstrating an anti-white bias.[18]

Accepting "all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff[]" *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004), Noakes has pleaded sufficient facts to establish that she (1) is a white woman,[19] and therefore a member of a protected group,[20] and (2) was subjected to unwelcome harassment.[21]

However, Noakes does not plead sufficient factual content on the remaining three elements of a hostile work environment case—namely, that any alleged harassment was conducted and permitted based on her race, that the harassment affected a term or condition of her employment, and that her employer failed to take prompt remedial action—for the Court to draw the reasonable inference that Noakes

---

[18] *Id.*
[19] *Id.* ¶ 7.
[20] *See McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273 (1976) (holding that white employees are protected from race discrimination under Title VII of the Civil Rights Act of 1964 and the Civil Rights Act of 1870).
[21] R. Doc. No. 1, ¶¶ 90–99.

was subjected to a hostile work environment. *WC & M Enters., Inc.*, 496 F.3d at 399. Accordingly, Noakes fails to state a cognizable claim of a Title VII hostile work environment violation based on race.

First, the factual statements alleged in Noakes' complaint indicate that the source of conflict between Noakes and her coworkers was not her race, but her opinions on "some of the global protests and riots" and her "critici[sm of] a video of a group of white rioters in the United Kingdom."[22] Nothing in Noakes' complaint indicates that she was the subject of harassment *because of* her race. Merely noting that one's alleged harassers are of a different race—here, "non-white"—is not sufficient to prove their conduct was motivated by racial animus.

Similarly, Noakes offers no evidence to support her claims that TSA's conduct, or failure to take a certain action, was motivated by racial preference or to target Noakes because of her race. For instance, Noakes claims that TSA "refused" to discipline her alleged harassers because they are "non-white."[23] She also claims that TSA fostered and permitted a "hostile work environment to continue specifically to pressure Ms. Noakes to resign."[24] Yet she offers no "further factual enhancement" to make these claims rise above the level of "naked assertion" and to pass "the line between possibility and plausibility of 'entitle[ment] to relief.'" *Twombly*, 550 U.S. at 557 (quoting Rule 8(a)(2)). To extrapolate from the lone fact that Noakes is white and her coworkers are not and conclude that she was singled out for harassment (and that

---

[22] *Id.* ¶ 9.

[23] *Id.* ¶ 91.

[24] *Id.* ¶ 94.

TSA permitted this harassment) because of her race is too great of a logical leap in the absence of any factual support.

Second, the facts provided in Noakes' complaint do not support a finding that any harassment she suffered affected a term, condition, or privilege of her employment. To do so, the harassment must be "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002) (quoting *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993)) (quotations omitted). To be sufficiently severe or pervasive to alter the working conditions of the victim's employment, "not only must the victim perceive the environment as hostile, the conduct must also be such that a reasonable person would find it to be hostile or abusive." *WC & M Enters., Inc.*, 496 F.3d at 399. When determining whether the victim's work environment was objectively hostile or abusive, courts must consider the totality of the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Walker v. Thompson*, 214 F.3d 615, 625 (5th Cir. 2000) (quoting *Harris*, 510 U.S. at 23). "No one factor is determinative." *WC & M Enters., Inc.*, 496 F.3d at 399.

While critical social media posts made by Noakes' coworkers may have been unpleasant, considering the totality of the circumstances, they are not so offensive as to fundamentally change the conditions of her employment. First, the posts were

limited to an isolated period of time[25] and took place online and outside of the workplace. Second, though Noakes' complaint states that the posts made by her coworkers showed her "personal identifiable information,"[26] including her "name, photo, employer, title, and work location[,]"[27] none of this information constitutes "personally identifying information," such as "social security numbers, birth dates, or contact information." *Gremillion v. Grayco Commc'ns, L.P.*, No. 16-9849, 2018 WL 2219333, at *2 (E.D. La. May 15, 2018) (van Meerveld, M.J.). Indeed, information on employer, role, and employment location is the same information many people share publicly on LinkedIn pages. While Noakes may not have preferred that this information be shared, as is her prerogative, the mere fact that it was shared does not satisfy Title VII's "demanding" standard. *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998). Further, though Noakes references "hostile and threatening" comments on the social media posts,[28] she does not allege that they were made by her coworkers and therefore that her professed fear of coming to work[29] was reasonable.

Noakes does not allege sufficient factual content for this court to find that any harassment she suffered was so severe and pervasive as to alter the conditions of her employment. Her experience may have been unpleasant, but as the Supreme Court noted, Title VII is not a "general civility code." *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 80 (1998).

---

[25] *Id.* ¶ 12.
[26] *Id.* ¶ 18.
[27] *Id.* ¶ 21.
[28] *Id.* ¶ 17.
[29] *Id.* ¶ 23.

Finally, despite Noakes' claims that "TSA took no remedial action"[30] regarding her alleged workplace harassment, Noakes' complaint indicates that TSA did in fact take steps to address the concerns Noakes raised in her AHP investigation. Two weeks after Noakes lodged her AHP complaint, Federal Security Director of Louisiana Arden Hudson ("FSD Hudson") "sent an email to the MSY workforce" which "informed the workplace about unacceptable social media and internet behavior, including TSA's Zero Tolerance Policy. The letter also discussed cyberbullying [and] respecting people's privacy . . . ."[31] Reminding employees that TSA has a "Zero Tolerance Policy" for workplace harassment satisfies the Fifth Circuit's requirement that "[p]rompt remedial action must be reasonably calculated to end the harassment." *Hockman v. Westward Commc'ns, LLC*, 407 F.3d 317, 329 (5th Cir. 2004) (quotations omitted) (holding that [an] employee could not prove her employer failed to take remedial actions where it provided employee with an "employee handbook containing the company's antiharassment policy[,]" which directed the employee to report incidents of harassment to the Director of Human Resources if she "does not feel that her allegation is being handled satisfactorily by . . . her supervisor," and where the employee acknowledged receipt of this handbook and its provisions).

Though "[t]he record is rife with vague assertions of racial animus," *Ramsey*, 286 F.3d at 269, the assertions are little more than "conclusory allegations,

---

[30] *Id.* ¶ 26.
[31] *Id.* ¶¶ 24–25.

unwarranted factual inferences, or legal conclusions." *Plotkin*, 407 F.3d at 696. Noakes' "subjective belief of racial motivation, without more, is not sufficient to show a hostile work environment." *Cavalier v. Clearlake Rehab. Hosp., Inc.*, 306 F. App'x 104, 107 (5th Cir. 2009). Noakes' complaint fails to state a cognizable claim of a hostile working environment based on race in violation of Title VII, even under the liberal pleading standard of the Rule 12(b)(6) stage.

### B. Noakes' Complaint States a Cognizable Title VII Retaliation Claim (Count II) Only as to the Auditing and Termination of Her FMLA Leave

#### i.       *Retaliation claims under Title VII*

Pursuant to Title VII of the Civil Rights Act of 1964,

> [i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e-3(a) (Discrimination for making charges, testifying, assisting, or participating in enforcement proceedings).

A plaintiff need not establish a prima facie case of retaliation to survive a Rule 12(b)(6) motion to dismiss. *See Stone*, 590 F. App'x at 339; *see also Nieman v. Hale*, No. 12-2433, 2012 WL 3204990, at *4 (N.D. Tex. Aug. 8, 2012) ("a plaintiff is not required to plead a prima facie case based on discrimination and retaliation at the pleading stage for purposes of Rules 8 and 12(b)(6)."); *Thornton v. Dallas ISD*, No. 13-3012, 2014 WL 46398, at *3 (N.D. Tex. Jan. 6, 2014) ("The Fifth Circuit has

cautioned that a plaintiff is not required to make a showing of each prong of the prima facie test at the pleading stage").

Nonetheless, the plaintiff must "at least plead facts giving rise to a reasonable inference of plausibility for the ultimate elements of her claim." *Jenkins v. Louisiana Workforce Comm'n*, 713 F. App'x 242, 245 (5th Cir. 2017). To that end, and as previously stated, it is useful to consider each element of a prima facie case of Title VII retaliation, to "analyz[e] the sufficiency of her complaint." *Id.* (applying the holding—that a plaintiff need not plead a prima facie case of discrimination at the Rule 12(b)(6) stage, but must plead sufficient facts on each element of the claim to make her case plausible—of *Chhim v. Univ. of Texas*, 836 F.3d 467, 470 (5th Cir. 2016) to a Title VII retaliation claim); *accord Thompson v. Houma Terrebonne Hous.*, No. 18-9394, 2019 WL 2524591, at *3 (E.D. La. June 19, 2019) (Feldman, J.). The elements of a prima facie Title VII retaliation case are:

> (1) [the plaintiff] engaged in an activity protected by Title VII; (2) that an adverse employment action occurred; and (3) that there was a causal connection between the participation in the protected activity and the adverse employment decision.

*McMillan v. Rust Coll., Inc.*, 710 F.2d 1112, 1116 (5th Cir. 1983).

Protected activity, under Title VII's anti-retaliation provision, "can consist of either: (1) "oppos[ing] any practice made an unlawful employment practice by this subchapter" or (2) "ma[king] a charge, testif[ying], assist[ing], or participat[ing] in any manner in an investigation, proceeding, or hearing under this subchapter." *E.E.O.C. v. Rite Way Serv., Inc.*, 819 F.3d 235, 239 (5th Cir. 2016) (quoting 42 U.S.C. § 2000e-3(a) (alterations in *Rite Way*)).

14

For purposes of a retaliation claim, an adverse employment action is one that "a reasonable employee would have found . . . materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006).[32]

"To demonstrate that a causal link exists between the protected activity and the adverse employment action at the prima facie stage, an employee can show close enough timing between her protected activity and the adverse employment action." *Saketkoo v. Admins. of Tulane Educ. Fund*, 31 F.4th 990, 1001 (5th Cir. 2022) ("*Saketkoo v. Admins.*"). If a plaintiff relies solely on temporal proximity to establish the causal link, the temporal proximity must be "very close." *See Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (per curiam). While the Supreme Court has approvingly cited a case holding that a three-month gap is insufficient to show causation, *Breeden*, 532 U.S. at 273–74 (citing *Richmond v. ONEOK, Inc.*, 120 F.3d 205, 209 (C.A.10 1997)), the Fifth Circuit has held that a period of approximately two months between the protected activity and the adverse employment action is sufficient temporal proximity "to show causal connection for purposes of a prima facie case." *Outley v. Luke & Assocs., Inc.*, 840 F.3d 212, 219 (5th Cir. 2016); *see also Garcia*

---

[32] The Supreme Court, in promulgating the above definition in *Burlington*, declined to apply the narrow definition of adverse employment actions utilized in Title VII discrimination claims to Title VII retaliation claims. Because the discrimination and retaliation provisions of Title VII have different statutory language and different purposes, "the antiretaliation provision, unlike the substantive provision, is not limited to discriminatory actions that affect the terms and conditions of employment." *Burlington*, 548 U.S. at 64.

*v. Pro. Cont. Servs., Inc.*, 938 F.3d 236, 243 (5th Cir. 2019) (period of two-and-a-half months is close enough to "establish causation.").

> ii.    *Noakes has failed to state a claim of Title VII retaliation with regards to all of her alleged adverse employment actions except for the allegation regarding the termination of her FMLA leave*

Noakes engaged in protected activity when she filed her EEO complaint. *Dollis v. Rubin*, 77 F.3d 777, 781 (5th Cir. 1995) ("[F]iling an administrative complaint is clearly protected activity"). As stated, the remaining two elements of a prima facie case of retaliation are (1) the employee suffered an adverse employment action, and (2) the adverse employment action was causally related to her participation in the protected activity. Using these remaining elements of a prima facie case as a guide to "analyz[e] the sufficiency of her complaint[,]" *Jenkins*, 713 F. App'x at 245, the Court will first address the adverse employment actions Noakes alleges TSA took against her, and will then consider whether there is a causal relationship between any adverse actions and Noakes' filing of her EEO complaint.

Noakes alleges TSA took four adverse employment actions against her: (1) denying her applications for promotion;[33] (2) "auditing her hours [and] denying her FMLA leave to which she was entitled[;]"[34] (3) "dismissing Ms. Noakes's original harassment complaint[;]"[35] and (4) "baselessly investigating Ms. Noakes subsequent to the pretextual complaints of her colleagues."[36]

---

[33] R. Doc. No. 1, ¶ 102.
[34] *Id.* ¶ 103.
[35] *Id.*
[36] *Id.*

Preliminarily, the Court notes that TSA's decisions to terminate its investigation of Noakes' harassment claim and subsequently to investigate allegations made against Noakes by her coworkers occurred *before* she made her first EEO complaint. As stated in Noakes' complaint, her supervisor contacted her on March 1, 2021 to have a Pre-Decisional Discussion, the first step in TSA's formal disciplinary process, regarding an allegation made against Noakes.[37] On March 9, 2021, Noakes was informed that a second allegation had been made against her.[38] Noakes also states that TSA informed her on April 14, 2021 that its investigation into her own allegations of harassment had concluded and that TSA would take no action.[39] However, Noakes' complaint states that she initiated contact with the EEO counselor for TSA on May 18, 2021, and filed her formal complaint on July 1, 2021.[40] Therefore, "any facts claimed as retaliation prior to May [18, 2021] do not have 'a causal connection between the protected activity and the adverse employment action.'" *Stone*, 590 F. App'x at 341 (quoting *McCoy v. City of Shreveport*, 492 F.3d 551, 556–57 (5th Cir. 2007)). The Court's analysis will therefore consider only Noakes' allegations that TSA took adverse employment action against her by denying her applications for promotion and by terminating her FMLA leave.

---

[37] *Id.* ¶¶ 46–48.

[38] *Id.* ¶ 56.

[39] *Id.* ¶ 45.

[40] *Id.* ¶¶ 81, 83. While TSA's investigation into the two allegations made against Noakes was completed on November 9, 2021, and therefore after she filed her EEO complaint, TSA's dismissal of the allegations against Noakes was not an adverse employment action. *Id.* ¶ 62.

As noted above, under the broader definition of "adverse employment actions" specific to Title VII retaliation claims,[41] established by the Supreme Court in *Burlington*, 548 U.S. at 57, an adverse employment action is one that "could well dissuade a reasonable worker from making or supporting a charge of discrimination." Accepting all well-pleaded facts in Noakes' complaint as true and construing all questions of fact in the light most favorable to her, Noakes has sufficiently alleged that she suffered adverse employment actions when she was denied promotions, and when TSA audited her hours and terminated her FMLA leave—actions which would likely deter a reasonable employee from making a claim of discrimination.

Proceeding to the final element in a prima facie claim of retaliation under Title VII, Noakes asserts that "TSA would not have taken any of these actions . . . but for her prior protected EEO complaint."[42] To determine if Noakes has stated a plausible case of retaliation, the Court must consider whether she has pleaded sufficient facts indicating a causal relationship between her filing an EEO complaint and each of the adverse actions discussed above. *Davis*, 761 F. App'x at 454.

---

[41] Note that this broader definition applies only in the context of Title VII *retaliation* claims. *See McCoy*, 492 F.3d at 559 ("In the recent case of *Burlington Northern & Santa Fe Railway Co. v. White*, however, the Supreme Court abrogated our approach in the *retaliation* context in favor of the standard used in the Seventh and D.C. Circuits, which defines an adverse employment action as any action that 'might well have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" (Emphasis in original)).

[42] R. Doc. No. 1, ¶ 104. Where an argument refers to either or both of Noakes' first and second EEO complaints, the Court will treat the argument as only referring to the first, exhausted EEO complaint.

Noakes fails to "at least plead facts giving rise to a reasonable inference of . . . plausibility" that there was a causal relationship between the denial of her applications for promotion and her EEO complaint. *Id.* As evidence to substantiate her claim that she was denied promotion because she previously filed an EEO complaint, Noakes states that "a non-white employee with no known history of any EEO complaints was chosen over her" for promotion,[43] and Noakes "heard from multiple TSA employees that TSA had predetermined to choose a non-white employee for that position."[44] Noakes goes on to assert that "TSA improperly took into account Ms. Noakes's filing of an EEO complaint and the EEO's subsequent dismissal in addition to her race"[45] and "[h]ad she not lodged the EEO complaint in this case, [Noakes] would have been selected for the position."[46]

Even "accept[ing] all well-pleaded facts as true and constru[ing] all factual allegations in the light most favorable to the plaintiff[,]" *Spivey*, 197 F.3d at 774, this allegation is based on little more than conclusory assertions or workplace scuttlebutt. Further, Noakes' assertions implicitly ask this Court to conclude that the "non-white employee" who was promoted in Noakes' stead was not equally or more qualified than Noakes for the position, and was instead promoted either on the basis of racial preference or merely to punish Noakes. Without more support in the pleadings, the Court will not suppose such a conclusion. Noakes fails to provide the court with well-

---

[43] *Id.* ¶ 72.
[44] *Id.* ¶ 73.
[45] *Id.* ¶ 74.
[46] *Id.*

pleaded factual allegations which would "permit the court to infer more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 679.

However, accepting all well-pleaded factual allegations and drawing all reasonable inferences in her favor, Noakes has pleaded sufficient facts to allow the Court to plausibly infer, based on temporal proximity, a causal relationship between Noakes' EEO complaint and the auditing of her hours and subsequent termination of her FMLA leave.

In her complaint, Noakes states that "once EEO dismissed Ms. Noakes's complaint of discrimination, TSA . . . began auditing Ms. Noakes's hours . . . ."[47] As a result, Noakes was informed that, "although she had only used 80 of the 480 allowed hours of FMLA leave, she would not be allowed any further FMLA leave after February 17, 2022."[48] While Noakes' complaint is not specific regarding the exact amount of time that elapsed between the termination of her AHP investigation and the audit of her FMLA hours, Noakes alleges it was a matter of weeks between the two events.[49] As noted previously, Fifth Circuit caselaw indicates that a period of two-and-a-half months is sufficiently close to show a causal relationship between a

---

[47] *Id.* ¶ 75.

[48] *Id.* ¶ 78.

[49] *Id.* Noakes' complaint states that "[w]ithin weeks of threatening Ms. Noakes with social media monitoring and potential discipline, and as a result of its 'audit,' TSA inexplicably instructed Ms. Noakes that, although she had only used 80 of the 480 allowed hours of FMLA leave, she would not be allowed any further FMLA leave after February 17, 2022." *Id.* While it is difficult to determine exactly when this "threat" occurred, based on the factual allegations in Noakes' complaint, it appears it occurred around November 9, 2021, when TSA dismissed the investigation into Noakes. *Id.* ¶¶ 62–66.

protected activity and an adverse employment action, *Garcia*, 938 F.3d at 243, and the timeline in Noakes' pleadings is well within that time period. Based on the well-pleaded allegations in Noakes' complaint, she has pleaded sufficient facts indicating a causal link between her protected activity and the adverse employment action she suffered. Accordingly, only Noakes' claim of retaliation arising from the audit of her hours and the termination of her FMLA leave states a cognizable claim for relief.

### C. Noakes' Complaint Fails to State a Cognizable Title VII Disparate Treatment Discrimination Claim (Count III)

*i.    Disparate treatment discrimination claims pursuant to Title VII*

Pursuant to Title VII of the Civil Rights Act of 1964, it is an "unlawful employment practice for an employer"

> (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or
>
> (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

42 U.S.C. § 2000e-2(a)(1)-(2).

Generally, to establish a prima facie case of Title VII discrimination pursuant to a disparate treatment theory,[50] based on circumstantial evidence,[51] a plaintiff must show that she

> (1) is a member of a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action by the employer; and (4) was replaced by someone outside her protected group or was treated less favorably than other similarly situated employees outside the protected group.

*Hamilton v. Dallas Cnty.*, 42 F.4th 550, 554 (5th Cir. 2022). The "'ultimate question' in a Title VII disparate treatment claim [is] 'whether a defendant took the adverse employment action against a plaintiff *because of* her protected status.'" *Raj v. Louisiana State Univ.*, 714 F.3d 322, 331 (5th Cir. 2013) (quoting *Kanida v. Gulf Coast Med. Personnel LP*, 363 F.3d 568, 576 (5th Cir. 2004)) (emphasis in *Raj*); see also *Pacheco v. Mineta*, 448 F.3d 783, 787 (5th Cir. 2006) ("[P]roof and finding of discriminatory motive is required" in disparate treatment claims).

---

[50] While both parties refer to Noakes' claim as "race discrimination," the theory of employment discrimination alleged in her complaint is "disparate treatment." Disparate treatment occurs when an "employer simply treats some people less favorably than others because of their race, color, religion, sex, or national origin." *Int'l Bhd. of Teamsters v. U.S.*, 431 U.S. 324, 335 n.15 (1977). In the instant case, Noakes' complaint alleges that "TSA discriminated against [her] on the basis of race by granting preferential treatment to her non-white harassers throughout the investigations and adjudications of their claims, and manifesting prejudice against [her] as a white employee throughout the same." R. Doc. No. 1, ¶ 108.

[51] For the purposes of Title VII, "direct evidence includes any statement or written document showing a discriminatory motive on its face," and which, "if believed, proves the fact without inference or presumption." *Herster v. Bd. of Supervisors of La. State Univ.*, 887 F.3d 177, 185 (5th Cir. 2018) (citations omitted). Noakes' complaint does not allege direct evidence, only circumstantial evidence.

Again, a plaintiff need not make out a prima facie case of disparate treatment to survive a Rule 12(b)(6) motion to dismiss for failure to state a claim. *Swierkiewicz*, 534 U.S. at 510–12; *accord Raj*, 714 F.3d at 331. Nonetheless, as noted above, she must "plead sufficient facts on all of the ultimate elements of a disparate treatment claim to make [her] case plausible[,]" *Chhim*, 836 F.3d at 470, and to allow the Court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

Plaintiffs filing Title VII disparate treatment claims using circumstantial evidence accordingly "must 'identify at least one coworker outside of [their] protected class who was treated more favorably under nearly identical circumstances.'" *Saketkoo v. Tulane Univ. Sch. of Med.*, 510 F. Supp. 3d 376, 386 (E.D. La. 2020) (Africk, J.) ("*Saketkoo v. Tulane*") (quoting *Alkhawaldeh v. Dow Chem. Co.*, 851 F.3d 422, 426 (5th Cir. 2017) (citation omitted)); *see also Chhim*, 836 F.3d at 471 (dismissing plaintiff's Title VII disparate treatment case based, in part, on the fact that he "plead[ed] no facts that suggest the applicant hired by the [employer] was less qualified than [him] or was similarly situated."). Specifically, the Fifth Circuit

> require[s] that an employee who proffers a fellow employee as a comparator demonstrate that the employment actions at issue were taken under nearly identical circumstances. The employment actions being compared will be deemed to have been taken under nearly identical circumstances when the employees being compared held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, and have essentially comparable violation histories. And, critically, the plaintiff's conduct that drew the adverse employment decision must have been nearly identical to that of the proffered comparator who allegedly drew dissimilar employment decisions.

*Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253, 260 (5th Cir. 2009) (citations omitted). Failure to identify a potential comparator "alone justifies dismissal of [a plaintiff's] Title VII claim[,]" and "[i]f no such comparator exists, the plaintiff cannot establish a *prima facie* case." *Saketkoo v. Tulane*, 510 F. Supp. 3d at 386 (quotations omitted); *see also Saketkoo v. Admins.*, 31 F.4th at 998 n. 3 ("*Lee* sets out the requirements for conducting the comparator analysis. Although it does not affirmatively state that such an analysis is required to satisfy the fourth prong and make a prima facie case, our court has since interpreted *Lee* this way.")

ii.   *Noakes has failed to state a claim of race-based disparate treatment in violation of Title VII*

Noakes has pleaded sufficient facts to establish that she (1) is a white woman,[52] and therefore a member of a protected group,[53] and (2) neither party disputes that she was qualified for the promotions for which she applied and entitled to FMLA leave.[54] However, Noakes does not plead sufficient factual content on the remaining two ultimate elements of a disparate treatment case—namely, that she suffered some adverse employment action by her employer, and that she was treated less favorably than other similarly situated employees outside her protected group because of her protected characteristic—for the Court to draw the reasonable inference that Noakes was subjected to disparate treatment based on her race.

---

[52] R. Doc. No. 1, ¶ 7.
[53] *See McDonald*, 427 U.S. 273.
[54] *See* R. Doc. No. 1 ¶¶ 72, 76.

First, considering only Noakes' exhausted first EEO complaint, the Court finds that Noakes has failed to plead sufficient facts to make a plausible claim that TSA took adverse employment action against her. Noakes' complaint asserts that "TSA exhibited anti-white bias"[55] against her in connection with TSA's decision to close her AHP investigation by:

> (1) refusing to discipline any of Ms. Noakes's non-white harassers; (2) refusing to investigate Ms. Noakes's chief harassers, who are non-white; (3) violating TSA's own policies in bringing allegations against Ms. Noakes without any supporting documents eight months after the supposed misconduct; (4) violating TSA's own policies by failing to render a timely decision on any of the complaints at issue, in a way that caused psychological harm to Ms. Noakes; (5) lying to Ms. Noakes on or around March 1, 2021, when it certified that it had no further allegations when in fact it did, or fabricating an additional allegation, Allegation #2, upon receiving Ms. Noakes's response to the first allegation; (6) construing the First Amendment to protect non-white employees' harassment of Ms. Noakes's but not a white employee's expressions of political or social opinions; (7) monitoring Ms. Noakes's social media; and (8) threatening Ms. Noakes with additional disciplinary processes if she expresses a viewpoint disfavored by TSA.[56]

Per the Fifth Circuit's jurisprudence, adverse employment actions in the context of Title VII disparate treatment claims "include only ultimate employment decisions such as hiring, granting leave, discharging, promoting, or compensating[.]" *Hamilton*, 42 F.4th at 555. An employment action that "'does not affect job duties, compensation, or benefits' is not an adverse employment action." *Welsh v. Fort Bend Indep. Sch. Dist.*, 941 F.3d 818, 824 (5th Cir. 2019) (quoting *Pegram v. Honeywell,*

---

[55] *Id.* ¶ 109.

[56] *Id.* Noakes' allegations with regards to her claims of race-based discrimination in violation of Title VII are largely identical to her allegations of a hostile work environment based on race. *See* Section III, A., ii, *supra.*

*Inc.*, 361 F.3d 272, 282 (5th Cir. 2004)). And, relevant to the facts in the instant case, the Fifth Circuit has held that "allegations of unpleasant work meetings, verbal reprimands, improper work requests, and unfair treatment do not constitute actionable adverse employment actions as discrimination or retaliation." *King v. Louisiana*, 294 F. App'x 77, 85 (5th Cir. 2008).

Considering the definition of "adverse employment action," declining to pursue disciplinary action against Noakes' coworkers is not an adverse employment action. Nor are the other related actions Noakes asserts TSA took in connection with the termination of her AHP investigation ("lying," "refusing," "construing," etc.) akin to actions the Fifth Circuit has deemed to be "adverse employment actions"—hiring, promoting, firing, compensating, or granting leave. The Fifth Circuit has held that reprimanding an employee does not constitute an ultimate employment action. *See Green v. Admins. of the Tulane Educ. Fund*, 284 F.3d 642, 657–58 (5th Cir. 2002) ("[R]eprimands[ ] do not constitute ultimate employment decisions"), *abrogated on other grounds by Burlington*, 548 U.S. 53; *see also Washington v. Veneman*, 109 F. App'x 685, 689 (5th Cir. 2004) (listing actions the Fifth Circuit has held are not ultimate employment actions, including reprimands for reading on the job, "rude behavior from supervisors, undeserved poor performance ratings, denying a performance award, . . . threatening disciplinary action, [or] disclosing personal information on an organizational chart . . . ."). Accordingly, simply closing an investigation and declining to reprimand *other* employees does not constitute an ultimate employment decision and, therefore, an adverse employment action.

Second, even if the conduct above *did* constitute adverse employment actions, Noakes cannot prove a nexus between the conduct and any racially discriminatory motive. For instance, Noakes' complaint states that when TSA informed Noakes on April 14, 2021 that her AHP investigation would be closed, TSA "failed to list several of the most egregious offending employees, including the non-white employees" who had "revealed" Noakes' personal information—presumably a reference to the Facebook post made by a coworker which included Noakes' "name, photo, employer, title, and work location."[57] Noakes proceeds to assert that "[a]pparently, TSA never investigated those portions of Ms. Noakes's complaint. No explanation was given as to why TSA refused to investigate these employees. The employees it failed to investigate were all non-white."[58] Noakes offers no factual support for the assertions that TSA "refused" or "failed" to investigate all parts of Noakes' complaint, Noakes fails to provide factual allegations to support the implicit assertion that the names of Noakes' "non-white" alleged harassers were omitted *because* they were "non-white."

Likewise, Noakes asserts that "'TSA legal' had apparently informed FSD Hudson that he could not discipline the offending employees, who were non-white, because their speech was protected by the First Amendment."[59] Again, the implicit assertion is that TSA protected the speech of "non-white" employees in particular but did not offer the same protection to speech by white employees, even targeting white employees for retaliation based on their speech. Noakes' complaint employs the

---

[57] R. Doc. No. 1, ¶ 21.

[58] *Id.* ¶ 45.

[59] *Id.* ¶ 40.

"weasel word"[60] "apparently" to imply factual proof without providing any. The Court cannot "accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions[,]" *Plotkin*, 407 F.3d at 696.

Finally, Noakes similarly has not identified at least one coworker outside of her protected class who was treated more favorably than her under nearly identical circumstances. *See Saketkoo v. Admins*, 31 F.4th at 998. Noakes' complaint states that no action was taken against "[n]on-white employees [who] openly shared on Facebook that they abuse the FMLA system," or against non-white coworkers who "posted negative remarks" about individuals who participated in the events that transpired at the U.S. Capitol on January 6, 2021.[61] However, Noakes does not allege that these employees "held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, and have essentially comparable violation histories[,]" *Lee*, 574 F.3d at 260, as required by Fifth Circuit precedent. Noakes' vague allegations of unpunished coworkers are too general to provide a true comparator, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to survive a motion to dismiss. *Iqbal*, 556 U.S. at 679.

---

[60] The word "apparently" "fits squarely within that category commonly understood by lawyers to be 'weasel words.' Such words' meaning[s are] malleable to a point where they mean what the user wants them to mean in any given situation; they have no meaning of their own." *Abstrax, Inc. v. Hewlett-Packard Co.*, No. 14-158, 2014 WL 5677834, at *2 (E.D. Tex. Nov. 4, 2014); *see also Woodhill Corp. v. Fed. Emergency Mgmt. Agency*, 168 F.3d 1025, 1027 (7th Cir. 1999) ("[W]e use the weasel word 'apparently' . . . .").

[61] R. Doc. No. 1, ¶¶ 77, 79.

Accordingly, Noakes' complaint does not state a plausible Title VII disparate treatment claim because it fails to allege any facts that would allow the Court to draw the reasonable inference that TSA discriminated against Noakes on the basis of her race when it closed her AHP investigation.

### D. Noakes' Complaint Fails to State a Cognizable Claim for Retaliation Based on Protected Speech (Count IV)

*i.   Retaliation for protected speech claims under the First Amendment*

There are four elements to a prima facie First Amendment retaliation claim in the employment context: "(1) the plaintiff suffered an adverse employment decision, (2) the plaintiff's speech involved a matter of public concern, (3) the plaintiff's interest in speaking outweighed the governmental defendant's interest in promoting efficiency, and (4) the protected speech motivated the defendant's conduct." *Kinney v. Weaver*, 367 F.3d 337, 356 (5th Cir. 2004) (citing *Lukan v. N. Forest ISD*, 183 F.3d 342, 346 (5th Cir. 1999)).

Unlike in the context of Title VII claims, a plaintiff alleging retaliation in violation of the First Amendment must plead at the Rule 12(b)(6) stage each element of the prima facie case to state a cognizable claim. *See Cox v. Kaelin*, 577 F. App'x 306, 312 (5th Cir. 2014) (Plaintiff's complaint "contain[s] sufficient factual matter . . . to state a claim to relief that is plausible on its face, as it is plausible from the complaint that [the plaintiff] can succeed on all the elements of a First Amendment retaliation claim, and it therefore withstands [defendant's] motion to dismiss." (quotations omitted)); *see also Oscar Renda Contracting, Inc. v. City of Lubbock, Tex.*,

463 F.3d 378, 382 (5th Cir. 2006); *Briscoe v. Jefferson Cnty.*, 500 F. App'x 274, 278 (5th Cir. 2012).

In the context of First Amendment retaliation claims, "[a]dverse employment actions are discharges, demotions, refusals to hire, refusals to promote, and reprimands." *Benningfield v. City of Houston*, 157 F.3d 369, 376 (5th Cir. 1998), (quoting *Pierce v. Tex. Dep't of Crim. Just.*, 37 F.3d 1146, 1149 (5th Cir. 1994)). The Fifth Circuit has "declined to expand the list of actionable actions, noting that some things are not actionable even though they have the effect of chilling the exercise of free speech." *Breaux v. City of Garland*, 205 F.3d 150, 157 (5th Cir. 2000) (quoting *Benningfield*, 157 F.3d at 376). Specifically, the Fifth Circuit has held that "false accusations, verbal reprimands, and investigations [are] not actionable adverse employment actions." *Colson v. Grohman*, 174 F.3d 498, 511 (5th Cir. 1999). Likewise, "mere accusations or criticism" are not adverse employment actions. *Breaux*, 205 F.3d at 157–58 (citing *Harrington v. Harris*, 118 F.3d 359 365, 366 (5th Cir. 1997)).

    ii.    *Noakes has failed to plausibly state a claim of retaliation for protected speech in violation of the First Amendment*

Noakes alleges that "TSA's initial commencement of disciplinary action against [her], . . . as well as Defendant Chesterfield's threat against [Noakes] that TSA is monitoring her social media accounts" were "prohibited content-based restrictions on [her] free speech"[62] taken by Chesterfield because he disagreed with the opinions expressed in Noakes' social media posts.

---

[62] *Id.* ¶¶ 122–23.

With respect to the second element of a prima facie case, Noakes' complaint pleads sufficient factual content for the Court to infer that Noakes' social media posts involved a matter of public concern—protests against police violence in the wake of George Floyd's death in police custody.[63] Noakes' complaint therefore satisfies the second element of a prima facie case of retaliation under the First Amendment.

The third element of the prima facie test is the balancing test established by the Supreme Court in *Pickering v. Board of Education*, 391 U.S. 563 (1968). This test asks the Court, when evaluating First Amendment retaliation claims, to balance "the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Connick v. Myers*, 461 U.S. 138, 142 (1983) (alteration in original) (quoting *Pickering*, 391 U.S. at 568). However, the Fifth Circuit held in *Burnside v. Kaelin* that there is a rebuttable presumption at the motion to dismiss stage that no *Pickering* balancing is needed to state a First Amendment retaliation claim.[64] 773 F.3d 624 (5th Cir. 2014).

While that presumption may be rebutted when "'reasonable inferences drawn from a complaint' do not plausibly show that the employee's interests outweigh the employer's[,]" *Garza v. Escobar*, 972 F.3d 721, 728 (5th Cir. 2020) (quoting *Burnside*,

---

[63] *Id.* ¶ 9.

[64] "The rebuttable presumption applies because reasonable inferences drawn from a complaint, obviously drafted by the aggrieved employee, will generally lead to a plausible conclusion that the employee's interest in commenting on matters of public concern outweighs the employer's interest in workplace efficiency." *Burnside*, 773 F.3d at 628.

773 F.3d at 628), nothing in Noakes' complaint indicates that—nor do the defendants argue that—TSA's interests in efficiency outweighed Noakes' private interest in commenting on matters of public concern. The presumption is not rebutted, and the Court finds Noakes has satisfied the third element of a prima facie First Amendment retaliation case.

However, Noakes' complaint does not contain sufficient factual matter to state a facially plausible claim as to the remaining first and fourth elements: that she suffered an adverse employment action, and that such an adverse employment action was motivated by Noakes' protected speech.

First, based on Fifth Circuit caselaw, investigating allegations made by Noakes' coworkers against her is not an adverse employment action; investigations and rescinded reprimands are not actionable adverse employment actions. *Benningfield*, 157 F.3d at 376. It follows that merely terminating Noakes' AHP investigation and not finding in her favor is not an adverse employment action. What does and does not constitute an adverse action in this context is clearly established, *see id.*, and even a generous interpretation of "formal reprimand" does not encompass TSA's decisions to simply stop investigating her complaints and to not discipline her coworkers.[65]

---

[65] The distinction between formal reprimands and informal reprimands or investigations arises from the fact that "a formal reprimand, by its very nature, goes several steps beyond a criticism or accusation and even beyond a mere investigation; it is punitive in a way that mere criticisms, accusations, and investigations are not." *Colson*, 174 F.3d at 512 n.7.

Second, Noakes asserts that Chesterfield monitored her social media accounts in retaliation for her protected speech. As verbal reprimands and investigations are not adverse employment actions, *Colson*, 174 F.3d at 511, monitoring an employee's social media is not likely to meet the Fifth Circuit's bar for an actionable adverse employment action—even if it may have "the effect of chilling the exercise of free speech." *Id.* (citing *Pierce*, 37 F.3d at 1150). Moreover, Noakes has not offered any factual allegations which would raise her claim that Chesterfield is monitoring her social media activity above the level of the merely speculative. Noakes' complaint states that

> [w]hen TSA finally dismissed the allegations, Defendant Chesterfield stated that the decision to dismiss the cases against her was based upon the fact that there had been 'no similar conduct' by Ms. Noakes since June 2020. This statement strongly implies that Defendant Chesterfield was monitoring, and continuing to monitor, Ms. Noakes's social media for expressions of viewpoints he disfavored.[66]

Yet Noakes alleges no facts whatsoever to substantiate her claims that Chesterfield was (1) monitoring her social media accounts, and (2) was targeting her for expressing specific viewpoints that (3) he disagreed with—and not instead that TSA simply had not received another complaint from one of Noakes' coworkers about her social media posts. When, as here, "the allegations of the pleading do not allow the court to infer more than the mere possibility of wrongdoing, they fall short of showing that the pleader is entitled to relief." *Nieman*, 2012 WL 3204990, at *2 (citing *Iqbal*, 556 U.S. at 679). Even if monitoring an employee's social media to punish the

---

[66] R. Doc. No. 1, ¶¶ 63–64.

employee for expressing disfavored viewpoints could be an adverse employment action, Noakes proffers no facts that make this allegation plausible.

The factual support for Noakes' related claim that Chesterfield threatened her in retaliation for her protected speech is likewise lacking. Noakes' complaint states that when Chesterfield informed Noakes that the TSA would *not* be pursuing a disciplinary action against her, "Chesterfield stated that he would pursue no disciplinary charges 'at this time.' Taken together [with the comment Noakes alleges indicated that Chesterfield was monitoring her social media], this notice functioned as a threat: if Ms. Noakes were to at any time express any political or social viewpoints Defendant Chesterfield or other TSA management did not like, he would move forward with discipline against her."[67] Noakes alleges no facts that would support her interpretation of the phrase "at this time" as hostile or threatening. Noakes must provide more than mere supposition to substantiate her claim that Chesterfield retaliated against her and that this retaliation was motivated by her protected speech.[68] Where, as here, a plaintiff's complaint contains only "conclusory allegations and unwarranted deductions of fact[,]" dismissal is warranted. *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995).

---

[67] *Id.* ¶¶ 65–66.

[68] The defendants also assert that the First Amendment claim against Chesterfield should be dismissed on the grounds that it is "redundant of the claims against TSA[.]" R. Doc. No. 19-1, at 17. As the Court will dismiss this claim on the grounds that Noakes fail to state a cognizable claim for relief, the Court need not reach the question of whether it is redundant.

For the foregoing reasons, Noakes fails to plausibly state a cognizable claim of retaliation for protected speech in violation of the First Amendment.

## III.    CONCLUSION

For the reasons stated herein,

**IT IS ORDERED** that the defendants' motion to dismiss is **GRANTED IN PART** and **DENIED IN PART**.

**IT IS FURTHER ORDERED** that the defendants' motion is **GRANTED** insofar as the claims in Counts I, III, and IV of Noakes' complaint—her claims of a hostile work environment in violation of Title VII, disparate treatment in violation of Title VII, and retaliation for protected speech in violation of the First Amendment— are **DISMISSED.**

**IT IS FURTHER ORDERED** that the defendants' motion to dismiss is **DENIED** as to the claims in Count II of Noakes' complaint alleging retaliation in violation of Title VII by audits of Noakes' hours and premature termination of her FMLA leave. Defendants' motion to dismiss is **GRANTED** as to the claims in Count II of Noakes' complaint alleging retaliation in violation of Title VII by denial of promotion, termination of Noakes' AHP investigation, and initiation of an investigation against Noakes.

New Orleans, Louisiana, October 12, 2022.

_____
**LANCE M. AFRICK
UNITED STATES DISTRICT JUDGE**